## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| ANTONIO NICHOLS, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
|     vs. | )    CASE NO. 2:10-CV-2653-SLB-JEO |
| | ) |
| CARTER DAVENPORT, Warden; | ) |
| ATTORNEY GENERAL FOR THE | ) |
| STATE OF ALABAMA, | ) |
| | ) |
|     Respondents. | ) |

## <u>MEMORANDUM OPINION</u>

This is a habeas corpus case brought pursuant to 28 U.S.C. § 2254. (Doc. 1.)[1] It was filed by Antonio Nichols, an Alabama state prisoner, who was then acting *pro se*, against Warden of the St. Clair County facility where petitioner is incarcerated,[2] and the Alabama State Attorney General. (Doc. 1.) He has since retained counsel, (*see* doc. 5), who filed an amendment to the Petition., (doc. 6.) Respondents answered, denying that Nichols is entitled to relief. (Doc. 9.) Nichols filed materials in reply thereto, (docs. 12, 14), and the action is

---

[1]Reference to a document number, ["Doc. ____"], refers to the number assigned to each document as it is filed in the court's record.

[2]Petitioner originally named J.D. Wise, in his capacity as the Warden of the St. Clair Correctional Facility where Petitioner is imprisoned, as a respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); Rule 2(a), Rules Governing § 2254 Cases. Since the filing of the petition, Wise has been succeeded in that position by Carter Davenport. http://www. doc. alabama. gov facility. aspx?loc=21. Accordingly, Davenport is substituted for Wise as a matter of law. *See* Fed. R. Civ. P. 25(d).

now ripe for decision.  Upon consideration, the court concludes that the habeas petition is due to be denied.

## I.     BACKGROUND

In May 2006, Nichols was indicted in the Circuit Court of Jefferson County, Alabama, on the following charges:  (1) trafficking in cocaine in violation of Ala. Code § 13A-12-231; (2) possession of marijuana without the required excise tax stamp in violation of Ala. Code § 40-17A-4; (3) possession of marijuana in the first degree, in violation of Ala. Code § 13A-12-213; and (4) two counts of attempted murder, *see* Ala. Code §§  13A-6-2 and 13A-4-2. The State moved to consolidate the associated indictments and to join Nichols's case for purposes of trial with those of three co-defendants:  Alando McKenzie, Carlos Ivy, and Danny Woodson.   (C. 41, 43.)[3]  The trial court granted those motions in September 2006. (C. 10.)     Ultimately, the case went to trial in June 2007 against only Nichols and McKenzie, who was also charged with trafficking in cocaine, possession of marijuana in the first degree, and a marijuana tax stamp offense. (R. 5-6.)[4] Just before trial, the State dropped the tax stamp charges against both defendants, (R. 11), and Nichols's counsel moved to suppress all of the physical evidence that would be offered against his client, (R. 9-10).  In

---

[3]Citations to "C. __" are to the page of the "Clerk's Record" in the State trial court proceeding.  The Clerk's Record is contained within Docs. 9-1 (C. 1-97), 9-2 (C. 98-196), 9-3 (C. 197-224), 9-4 (C. 225-254), 9-5 (C. 255-275), 9-6 (C. 276-300), and 9-7 (C. 301-326.)

[4]Citations to "R. __" are to the page of the "Record Transcript" in the State trial court proceeding.  The Record Transcript is contained within Docs. 9-7 at pp. 27-96 (R. 1-70), 9-8 (R. 71-270), and 9-9 (R. 271-308.)

2

support, Nichols argued that the search warrant authorizing the search pursuant to which the evidence seized by police was not supported by probable cause.  (R. 10, 21.)  After an evidentiary hearing, the court summarily denied the motion to suppress.  (R. 22.)

At the conclusion of the trial, the trial court instructed the jury on the charges against Nichols:  (1) trafficking in cocaine; (2) possession of cocaine, as a lesser-included offense of trafficking; (3) possession of marijuana in the first degree; (4) possession of marijuana in the second degree, as a lesser included offense of first-degree possession; (5) attempted murder; and (6) attempted assault in the first degree, as a lesser included offense of attempted murder.  (R. 239-242, 255-275.)  Nichols was convicted on the cocaine trafficking count and both attempted murder counts, as well as possession of marijuana in the second degree.  (C. 14, 67-68.)  The trial court sentenced Petitioner under the Alabama Habitual Felony Offender Act, Ala. Code § 13A-5-9, to life imprisonment without parole on the trafficking charge and on each of the two attempted murder counts, and to 12 months imprisonment on the marijuana possession count.  Petitioner appealed, challenging the sufficiency of the evidence to support his conviction for trafficking and attempted murder.  The Alabama Court of Criminal Appeals rejected those claims in a 12-page, unpublished memorandum opinion and affirmed the judgment below.  (Doc. 9-11.)  The Alabama Supreme Court denied certiorari review.

Petitioner thereafter filed a timely *pro se* petition for post-conviction relief in the state trial court pursuant to Rule 32 of the ALABAMA RULES OF CRIMINAL PROCEDURE.  (Doc. 9-13

at 83-107.)   Nichols raised several claims alleging ineffective assistance of counsel in violation of the Sixth Amendment.   First, he argued that "he was denied the effective assistance of counsel on direct appeal and at trial where counsel failed to know the applicable law as it applied to [his] case and . . . that, due to the facts adduced at trial, reckless endangerment was a lesser-included offense of the charged attempted murder."   (*Id.* at 91.) Petitioner stated, "Counsel's failure to request the jury be charged on the lesser-included offense caused Nichols to be convicted of attempted murder (the greater offense) based on facts that supported the lesser-included offense of reckless endangerment."   (*Id.*)  He further argued that his appellate counsel was ineffective for failing to raise a claim on direct appeal based on trial counsel's ineffectiveness in this same regard.   (*Id.* at 91, 93.)  In his second Rule 32 claim, Petitioner contended that his appellate counsel was ineffective for failing to raise a claim on direct appeal challenging the trial court's denial of his motion to suppress evidence based on the Fourth Amendment.   (*Id.* at 94-95.)   Third and finally, Petitioner argued in his Rule 32 petition that "he was denied effective assistance of counsel and a fair trial where counsel failed to object to joinder and move to sever [Nichols] case from that of [his] co-defendant and [that] appellate counsel was [also] ineffective for failing to raise [such a claim] on direct appeal."   (*Id.* at 97.)  After the state trial court rejected these claims without a hearing, (*id.* at 35-37), Petitioner appealed to the Alabama Court of Criminal Appeals, (*see* doc. 9-14.)  That court affirmed the denial of Rule 32 Relief (Doc. 9-15), and the Alabama Supreme Court denied certiorari.

Nichols timely filed his instant § 2254 federal habeas application in this court.  In that *pro se* petition, he raised the following issues:

    (1)     "Whether the State made a prima facie case as to trafficking in cocaine against Nichols";

    (2)     "Whether the State made a prima facie case as to attempted murder charges against Nichols";

    (3)     "Appellate counsel was ineffective for not challenging trial counsel's failure to request jury instructions on [the] lesser-included offense [of reckless endangerment]";

    (4)     "Appellate counsel was ineffective for not challenging trial counsel's failure to object to joinder of [Nichols's] case [with that of his] co-defendant"; and

    (5)     "Appellate counsel was ineffective for failing to raise the denial of his motion to suppress the evidence, due to [the in]sufficiency of the search warrant";

(Doc. 1 at 5, 8-9.)  After counsel appeared on his behalf, Nichols filed an amendment to the petition, adding or otherwise clarifying that he is raising a claim based on the ground that his appointed trial counsel was constitutionally ineffective for failing to request a jury instruction on reckless endangerment, distinct from any claim regarding whether his appellate counsel was ineffective for failing to raise such an issue on direct appeal.  (Doc. 6.)

Filing its Answer, the State conceded that Nichols's § 2254 petition is timely and that he has exhausted his claims as they relate to the alleged insufficiency of the evidence and to his counsel's alleged ineffectiveness on direct appeal.  (*See* doc. 9.)  The State, contends, however, that Nichols's claim or claims alleging that his trial counsel was ineffective are

procedurally defaulted because they were not raised as distinct claims in the Rule 32 proceedings and exhausted on that ensuing appeal.  The State further argues that the rulings made by the Alabama Court of Criminal Appeals on the merits of Nichols's claims, to the effect that the evidence was sufficient to convict him and that his counsel was not ineffective on direct appeal, are entitled to deference under 28 U.S.C. § 2254(d).  As such, the State argues, Nichols is not entitled to habeas relief.

## II.    HABEAS REVIEW STANDARDS AND LIMITATIONS

### A.    Limits on the Availability of Review:  Exhaustion and Procedural Default

A federal district court is authorized to entertain an application for a writ of habeas corpus filed by a person in custody pursuant to the judgment of a state court on the ground that he is in custody in violation of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  However,  this court may not grant federal habeas relief based upon errors of state law unless such errors also give rise to a violation of the United States Constitution or federal law otherwise.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011); *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010).

A state prisoner is also generally ineligible for relief under § 2254 even as to federal claims unless he has first exhausted the remedies available in the courts of the State of conviction.  28 U.S.C. § 2254(b)(1)(A); *see Kelley v. Secretary for Dept. of Corr.*, 377 F.3d 1317, 1343-44 (11th Cir. 2004).  The exhaustion requirement is designed "to effect a proper balance between the roles of state and federal judicial institutions in protecting federal

rights." *Ogle v. Estelle*, 592 F.2d 1264, 1267 (5th Cir. 1979).[5]  As a matter of comity, the rule requires the federal courts to allow the State the initial "opportunity to pass upon and correct errors of federal law in the state prisoner's conviction."  *Fay v. Noia*, 372 U.S. 391, 438 (1963).  Such a rule furthers the strong federal policy that federal courts should not unduly or prematurely interfere with state court proceedings.  *See Rose v. Lundy*, 455 U.S. 509, 518 (1982).  The exhaustion requirement is not satisfied until the claim has been fully and fairly presented to the state courts for consideration.  *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Heath v. Jones*, 863 F.2d 815, 818 (11th Cir. 1989).  This means that "petitioners [must] present their claims to the state courts such that the reasonable reader would understand each claim's particular legal basis and specific factual foundation."  *Hunt v. Commissioner, Ala. Dep't of Corr.*, 666 F.3d 708, 730-31 (11th Cir. 2012)(quoting *Kelley v. Secretary for the Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004).  In other words, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." *Kelley*, 377 F.3d at 1345 (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988))(internal quotation marks omitted); *see also Lucas v. Secretary, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012).

Exhaustion requires a federal claim to be presented through one complete round of the State's trial and appellate review process, either on direct appeal or in State post-

---

[5]The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

conviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Alabama that includes presentation of claims to the Alabama Supreme Court. *See Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003); *Smith v. Jones*, 256 F.3d 1135, 1140-41 (11th Cir. 2001). Where a claim has not been exhausted in the State courts and the time in which to present the claim there has expired, the claim is procedurally defaulted and habeas review in the federal courts is generally precluded. *See Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *McNair v. Campbell*, 416 F.3d 1291, 1305 (11th Cir. 2005).

Further, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009)(quoting *Coleman*, 501 U.S. at 729; *Lee v. Kemna*, 534 U.S. 362, 375 (2002)); *Wainwright v. Sykes*, 433 U.S. 72, 81-88 (1977). "[C]onsistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, . . . when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone*, 556 U.S. at 465 (citing *Coleman*, 501 U.S. at 731). However, "federal courts on habeas corpus review of state prisoner claims . . . will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and

independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman*, 501 U.S. at 734-35 (quoting *Long v. Michigan*, 463 U.S. 1032, 1040-41 (1983)). Thus, in order for a state procedural ruling to constitute an independent and adequate ground precluding review of a federal claim, the last state court rendering a judgment in the case must "clearly and expressly" state that it is relying, at least in the alternative, on a purely state-law procedural ground to dispose of the federal claim without reaching its merits. *Coleman*, 501 U.S. at 734-35; *Harris v. Reed*, 489 U.S. 255, 263-265 & n.10 (1989). Further, to "qualify an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011)(quoting *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009)(internal quotation marks omitted)); *see also James v. Kentucky*, 466 U.S. 341, 348 (1984). A "discretionary" state procedural rule may satisfy such requirements. *See Kindler*, 558 U.S. at 60-61. However, a state procedural rule is not "adequate" if it is "applied in an arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001), or where the rule, even if otherwise generally sound, is "exorbitant" as applied in the petitioner's case. *Lee*, 534 U.S. at 376 ("There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.")(citation omitted).

### B.      Overcoming a Failure to Exhaust or a State Procedural Default

Where a state prisoner has not exhausted a federal claim or procedurally defaulted it in the State court, a petitioner is generally entitled to federal habeas review of the merits of

any such claim only upon a showing of either (1) "cause" for the default *and* resulting "prejudice," *or* (2) that failure to review the claim will result in a "fundamental miscarriage of justice."  *See Spencer v. Secretary, Dep't of Corr.*, 609 F.3d 1170, 1179-80 (11th Cir. 2010); *In re Davis*, 565 F.3d 810, 821 (11th Cir. 2009).  "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court."  *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003)(quotation marks and citation omitted); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986).  "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson*, 353 F.3d at 892 (citation omitted).  The "miscarriage of justice" exception applies "where a constitutional violation has resulted in the conviction of someone who is actually innocent." *House v. Bell*, 547 U.S. 518, 536 (2006)(citation omitted).

Under *Coleman*, even if a petitioner "had no right to counsel to pursue his appeal in state habeas" and even if "attorney error . . . led to the default of [the petitioner's] claims in state court," cause does not exist to excuse the procedural default.  *Coleman,* 501 U.S. at 757. However, the Supreme Court has recognized a "narrow exception" to *Coleman*'s procedural default rule, in the limited circumstances where state law "requires a prisoner to raise an ineffective assistance of trial counsel in a collateral proceeding."  *Martinez v. Ryan*, 132 S. Ct. 1309, 1318 (2012).  The Eleventh Circuit recently explained that the *Martinez* exception applies only where:

(1) a state requires a prisoner to raise ineffective-trial-counsel claims at the initial-review stage of a state collateral proceeding[, *i.e.*, a state collateral proceeding which provides the first occasion to raise a claim of ineffective assistance at trial] and precludes those claims during direct appeal; (2) the prisoner did not comply with state rules and failed properly to raise ineffective-trial-counsel claims in his state initial-review collateral proceeding; (3) the prisoner did not have counsel (or his . . . counsel was ineffective by not raising ineffective-trial-counsel claims) in that initial-review collateral proceeding; and (4) failing to excuse the prisoner's procedural default would cause the prisoner to lose a "substantial" ineffective-trial-counsel claim.

*Arthur v. Thomas*, 739 F.3d 611, 629 (11th Cir. 2014)(citing *Martinez*, 132 S. Ct. at 1318)(footnote omitted)).  The Supreme Court later held that the *Martinez* rule also applies "where . . . state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal."  *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013).

## C.    Review of Non-Defaulted Claims

Where state courts have addressed a claim on the merits, federal habeas review of the decision is limited by § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Williams v. Taylor*, 529 U.S. 362 (2000); *see also Johnson v. Williams*, 133 S. Ct. 1088 (2013).  Under AEDPA, a federal habeas court accords a presumption of correctness to a state court's factual findings. 28 U.S.C. § 2254(e)(1).  Where a claim has been adjudicated on the merits in the state courts, this court may not grant relief on such claim unless it determines that the adjudication of the claim either

11

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2); *see Premo v. Moore*, 131 S. Ct. 733, 739 (2011).  "This is a difficult to meet and [a] highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011)(internal citations and quotations omitted).  When the last state court rendering judgment affirms without explanation, this court presumes the state-court decision rests on the reasons given in the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991); *Sweet v. Secretary, Dep't of Corr.*, 467 F.3d 1311, 1316-17 (11th Cir. 2006).

## III.    DISCUSSION

### A.    Sufficiency of the Evidence

Nichols's first ground for habeas relief is that the State's evidence at trial failed to establish a prima facie case to support his convictions for either trafficking in cocaine or attempted murder.  A claim challenging the sufficiency of the evidence effectively asserts a violation of the Due Process Clause of the Fourteenth Amendment.  *See Jackson v. Virginia*, 443 U.S. 307 (1979); *Thompson v. Nagle*, 118 F.3d 1442, 1448 (11th Cir. 1997). With regard to such claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but to federal law for the determination of whether the evidence was sufficient under the Due Process Clause. *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012). The State concedes that these claims were exhausted in the Alabama courts.  However, because they were there rejected on their merits in Nichols's direct appeal, this court on habeas review must defer to the State court's resolution under § 2254(d).  *See Green v. Nelson*, 595 F.3d 1245, 1253 (11th Cir. 2010).

On direct appeal, the Alabama Court of Criminal Appeals summarized the testimony at trial as follows:

> Detective David Luke of the Birmingham Police Department testified that he was assigned to the Department's narcotics unit; that, around 5:00 p.m. on December 6, 2005, the unit executed a search warrant at a house located at 600 79th Street South; that the front of the house had an interior door and a burglar bar door; that, through a right front window, he saw movement in the house; and that, as they were approaching the front entrance of the house, someone in the house opened the interior door and slammed it shut.  He also testified that the officers then announced that they were police officers and were executing a search warrant; that they breached the outer burglar bar door and the interior door; and that they used a flash bang diversionary device to assist in their entry.

> Luke testified that, as he got to the second room of the home, he heard two gunshots coming from his left; that the officers did not return fire; that he continued through the house to a place where a suspect was being handcuffed; that he returned to the front bedroom, where he believed the gunshots originated, and found the appellant in a scuffle with three other officers; that they got the appellant on the floor and handcuffed him; and that, when they rolled the appellant over, there was a 9mm shell casing on the floor under him.

13

He also testified that Alando McKenzie was arrested in the rear bedroom and that Carlos Ivy and Danny Woodson were arrested in the kitchen.

Luke testified that officers found a backpack that contained crack cocaine, marijuana, and personal items and prescription bottles for Alando McKenzie in the front room by the front door; several bags containing marijuana and a marijuana cigar on sofas and cocaine hidden in a Playstation game console in the front room; and a digital scale and more marijuana in the kitchen.  He also testified that officers found a Glock 17 9mm pistol in the bedroom where they arrested the appellant; that the appellant had more than $200 in cash and a large bud of marijuana in his possession when they arrested him; and that Ivy had approximately $1,300 in cash in his possession.  He further testified that, after the scene was secured, two bullet holes were found in a wooden window frame in the front bedroom and that he thought there were bullet holes in the barbecue grill on the front porch.  Forensic testing established that the cocaine weighed more than 28 grams.

Detective Heath Boackle of the Birmingham Police Department testified that, on the evening of December 6, 2005, he led the entry team from the vehicle to the house where the search warrant was executed; that, as he approached the house, he saw someone look through the blinds to the right of the front door; that the burglar[-] bar door was closed and the interior door was open; that, as he announced that they were police officers with a search warrant, the appellant slammed the interior door shut; that the breach team opened the doors and he led them into the house; that he saw the appellant go into a room to the left of the front door; and that, as he entered the threshold of the living room, he heard two gunshots to his left.

Detective Robert Walker of the Birmingham Police Department testified that he and Detective Ronphael Kennedy were responsible for breaching the front door of the house; that they were on the left side of the door; that he saw someone open the interior door; that they removed the burglar bars, and someone set off the diversionary device; that the other officers proceeded into the house, and he heard multiple gunshots to his left; and that he and Detective Kennedy were the last two officers to enter the house.  He also testified that, seconds after he heard the gunshots, he, Kennedy, and Sergeant Michael Duldt went into the front bedroom; that they saw the appellant in a corner of that bedroom, wrestled him to the floor, and handcuffed him; and that they found a gun in the corner where the appellant had been standing and a shell casing on the floor under the appellant.

Detective Ronphael Kennedy of the Birmingham Police Department testified that he and Walker were in charge of breaching the door to the house; that, as they approached the front porch, he saw someone inside close the interior door; that they removed the burglar bar door and moved to the left of the door, and the other officers started entering the house; that he heard two gunshots very close behind him and Walker; that he, Duldt, and Kennedy located the appellant in the front left bedroom and handcuffed him; that they located a gun on a nightstand in the corner where the appellant had been standing; and that they found two shell casings in the bedroom and two bullet holes in the window frame going from inside to outside.

Danny Woodson testified that, on November 6, 2005, he lived at 600 79th Street South; that there had been a shootout at his house three weeks before, and McKenzie had been shot; that, before the officers arrived, he was attempting to help McKenzie change the bandage on his gunshot wound; that, when he heard someone approaching the house, he put cocaine and marijuana into McKenzie's backpack and left a marijuana cigarette on the couch; that he had gotten the cocaine out of the Playstation; that Carlos Ivey opened the front door and slammed it shut; that everyone started running; that the officers were shooting; that he never saw the appellant shooting; that the appellant did not own the cocaine or the marijuana; and that he was arrested and charged with trafficking in cocaine and possession of marijuana. He also testified that he did not hear the officers announce that they were police officers before they entered the house.

(Doc. 9-11 at 2-4.)

### 1.    Trafficking in Cocaine

Nichols first argues that the evidence was insufficient to establish that he was guilty

of trafficking in cocaine. Under the Alabama criminal code,

[a]ny person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine or of any mixture containing cocaine, described in Section 20-2-25(1), is guilty of a felony, which felony shall be known as 'trafficking in cocaine.'

15

Ala. Code § 13A-12-231(2).  Nichols contends that the evidence did not allow an inference that he possessed the cocaine recovered from the house because "no cocaine was found on" him because the house was not his and because neither the bookbag nor the Playstation belonged to him.  (Doc. 1 at 8.)  Nichols also adds that information provided by the informant as reflected in the search warrant executed in the raid did not "include[ ]" Nichols.  (*Id.*)  Accordingly, Nichols asserts, "Other than [his] mere presence [in the house], nothing connects [him] to the cocaine."  (*Id.*)

The Alabama Court of Criminal Appeals, however, disagreed with those arguments, stating in relevant part as follows:

> Based on evidence that the appellant was in the room where the backpack and Playstation were located when the officers arrived at the house, *see Korreckt* [*v. State*, 507 So. 2d 558, 564-65 (Ala. Crim. App. 1986)], (noting that presence of the accused at the scene may constitute incriminating evidence), and *Posey* [*v. State*, 736 So. 2d 656, 658-59 (Ala. Crim. App. 1998)], (noting that physical proximity to contraband is one factor that may provide the necessary circumstantial connection between the accused and the contraband); evidence that the appellant closed the interior door when the officers approached the house, ran from the living room into the left front bedroom, and shot at the officers, *see Posey, supra* (noting that conduct that evidences a consciousness of guilt when the accused is confronted with the possibility that contraband will be found may provide a connection between the accused and the contraband), and *Hart* [*v. State*, 612 So. 2d 520, 530 (Ala. Crim. App), *aff'd*, 612 So. 2d 536 (Ala. 1992)], (noting that flight is admissible as tending to show the accused's consciousness of guilt); and evidence that the appellant had a large bud of marijuana and more than $200 in cash in his pocket when officers arrested him, *see Posey, supra* (noting that evidence of actual possession may provide a connection between the accused and the contraband), the jury could have reasonably concluded that he constructively possessed the cocaine and thus was guilty of trafficking in cocaine.

(Doc. 9-14 at 10.)

The burden is on Nichols to show that the rejection of this claim by the Alabama Court of Criminal Appeals either was based on an unreasonable determination of the facts in light of the evidence or was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  28 U.S.C. § 2254(d); *Pinholster*, 131 S. Ct. at 1398; *Visciotti*, 537 U.S. at 25.  Nichols has failed to do so.  Rather, he only makes a few brief, conclusory statements in support of his position, and he cites no legal precedents from the Supreme Court of the United States or any other court.   (*See* Doc. 1 at 8.)  If Nichols's presence at the house were truly the ***only*** evidence against him, Supreme Court precedent would establish that such evidence would not itself be enough to support an inference of possession.  *See United States v. Romano*, 382 U.S. 136, 140-44 (1965).  However, as recited above by the Alabama Court of Criminal Appeals, there was substantial evidence of constructive possession against Nichols beyond his mere presence in the house, and it cannot be said that the state court's ruling was an unreasonable application of *Jackson*, 443 U.S. at 319, for purposes of § 2254(d).  *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012)("Under *Jackson*, evidence is sufficient to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting *Jackson*, 443 U.S. at 319); *see Black v. Thomas*, 2006 WL 2547405, at *3-6 (M.D. Ala. Aug. 31, 2006); *Anderson v. Trombley*, 451 Fed. Appx. 469, 474-75 (6th Cir. 2011); *Pimental v. Spencer*, 305 Fed. Appx. 672, 674 (1st Cir. 2009); *Ames v. Franklin*, 163 Fed. Appx. 729, 732-33 (10th Cir.

17

2006); *see also County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 163-65 (1979)(evidence was sufficient to support inference of possession by three adult males in an automobile in relation to two handguns found in the purse of their 16-year old female companion); *United States v. Thompson*, 473 F.3d 1137, 1142-43 (11th Cir. 2006)(discussing principles of constructive possession applicable in federal drug prosecutions).  This claim is due to be rejected.

### 2.    Attempted Murder

Nichols contests the sufficiency of the evidence to support his conviction on the two attempted murder counts.  Under Alabama law, "a person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense."  Ala. Code § 13A-4-2(a).  In turn, "a person commits the crime of murder if . . . with intent to cause the death of another person, he or she causes the death of that person or of another person." Ala. Code §§ 13A-6-2(a)(1).  Nichols was indicted and convicted on two counts of attempted murder based upon the theory that he fired shots at Detectives Walker and Kennedy as they were preparing to enter the house in the raid.

Nichols argues that the testimony fails to support a finding that he was the shooter or that the shots were intended for the named detectives.  (Doc. 1 at 8.)  Nichols further asserts that "it was never established by testimony of any of the victims nor the weapon and bullet holes that they were anywhere in the area where the alleged shots were to have been directed."  (*Id.*)  The Alabama Court of Criminal Appeals rejected these arguments and

18

concluded that the evidence supported Nichols's conviction on the attempted murder counts, as follows:

> The State presented evidence that officers saw the appellant run into the front left bedroom of the house, heard gunshots coming from that direction, found a gun in the room by the appellant and shell casings on the floor, and located gunshot holes going outside toward the front porch, which was close to where Walker and Kennedy were located while the other officers entered the house. Based on this evidence, the jury could have reasonably concluded that the appellant was guilty of attempting to murder Walker and Kennedy.

(Doc. 9-11 at 12.)

Nichols also fails to show that the rejection of this claim by the Alabama Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence or was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. Nichols again offers nothing but bald assertions to the effect of what he believes the evidence fails to show, and he cites no Supreme Court authority that ostensibly conflicts with the decision of the Alabama appellate court. The jury found that Nichols shot at and attempted to kill the officers. Therefore, "the only question . . . is whether that finding was so unsupportable as to fall below the threshold of bare rationality. The state court [last addressing the issue] did not think so, and that determination in turn is entitled to considerable deference under . . . § 2254(d)." *Coleman*, 132 S. Ct. at 2065. This claim is due to be denied.

### B.      Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of

Counsel for his [defense]." U.S. Const. amend VI. "It has long been recognized that the

right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397

U.S. 759, 771 n. 14 (1970); *see also Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). A claim

of ineffective assistance of counsel can be established upon a showing that the (1) "counsel's

performance was deficient," and (2) "that the deficient performance prejudiced the defense"

because the "errors were so serious as to deprive the defendant of a fair trial, a trial whose

result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In a habeas corpus

action, the petitioner generally carries the burden to establish both components. *Lawhorn v.*

*Allen*, 519 F.3d 1272, 1293 (11th Cir. 2008)(citing *Atkins v. Singletary*, 965 F.2d 952, 958-59

(11th Cir. 1992)).

The Eleventh Circuit has explained:

> To establish a constitutionally deficient performance, the defendant
> must "identify the acts or omissions . . . that are alleged not to have been the
> result of reasonable professional judgment" to "show that counsel's
> representation fell below an objective standard of reasonableness" and
> "outside the wide range of professionally competent assistance." *Strickland*,
> 466 U.S. at 687, 690. The "highly deferential" reviewing court must "indulge
> a strong presumption that counsel's conduct falls within the wide range of
> reasonable professional assistance," *id.* at 689, and recognize that cases
> warranting the grant of habeas relief based on an ineffective assistance claim
> "are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313
> (11th Cir. 2000)(en banc)(quotation and citation omitted). . . . "[T]he
> defendant must overcome the presumption that, under the circumstances, the
> challenged action 'might be considered sound trial strategy.' " *Strickland*, 466
> U.S. at 689. . . . Because "it is all too easy to conclude that a particular act or

20

omission of counsel was unreasonable in the harsh light of hindsight," *Bell v. Cone*, 535 U.S. 685, 702 (2002), we must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

*Lawhorn*, 519 F.3d at 1293-94.

Once constitutionally deficient performance is established, the petitioner generally must also prove prejudice. To do so the petitioner must convince the court "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. While a petitioner need not show that counsel's deficient conduct "more likely than not altered the outcome of the case," it is not enough for the petitioner to show that counsel's errors merely had "some conceivable effect on the outcome of the proceeding." *Id.*, 466 U.S. at 693. A court may decline to reach the performance prong if convinced that the prejudice prong cannot be satisfied in any event. *Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010).

Nichols's allegations in this court might be construed as raising up to five distinct claims of ineffective assistance of counsel. The first two would be claims that his trial counsel was ineffective for failing to request a jury instruction on reckless endangerment, as a lesser-included offense of attempted murder and for failing to object to a joint trial with co-defendant Alando McKenzie. His other three claims are based on the conduct of counsel on direct appeal. Two such claims are that ***appellate*** counsel was ineffective for failing to raise

21

the two foregoing claims of ineffective assistance of **trial** counsel.  (*See* doc. 1 at 5, 8; doc. 6.)  The fifth and final claim is that appellate counsel was ineffective for failing to contest the trial court's denial of his motion to suppress.  (Doc. 1 at 9.)  The court will first consider the claims of ineffective assistance as they relate to counsel's performance at trial.

### 1.        Conduct of Trial Counsel

The State argues that Nichols has procedurally defaulted his claims of ineffective assistance of trial counsel by failing to raise and exhaust them in his Rule 32 proceedings. Nichols responds by insisting that he did fairly present such claims in his Rule 32 case and that, even if he did not, any failure in that regard is excused under *Martinez*.  The court concludes, however, that it is unnecessary to resolve whether Nichols presented and exhausted his ineffective-assistance-of-trial-counsel claims in the Alabama courts or whether *Martinez* applies.  This court is authorized to deny habeas claims on their merits even if the claims might be unexhausted.  28 U.S.C. § 2254(a)(2).  To that end, Nichols's claims alleging ineffective assistance of trial counsel are without merit even assuming that they are both not procedurally defaulted and subject to review *de novo*, with no deference to the state court under § 2254(d).

Nichols first claims that his trial counsel was ineffective because he failed to request a jury instruction on reckless endangerment, as a lesser-included offense of attempted murder.  A person commits the crime of reckless endangerment under Alabama law "if he recklessly engages in conduct which creates a substantial risk of serious physical injury to

22

another person." Ala. Code § 13A-6-24. Alabama courts have held that such may be a lesser-included offense of attempted murder, at least under certain circumstances. *Compare McNabb v. State*, 887 So. 2d 929, 976 (Ala. Crim. App. 2001); *Stennet v. State*, 564 So. 2d 95, 97 (Ala. Crim. App. 1990); and *Turner v. State*, 542 So. 2d 1314, 1315-16 (Ala. Crim. App. 1989), *with Cockrell v. State*, 890 So. 2d 168, 170 (Ala. Crim. App. 2003); *Campbell v. State*, 654 So. 2d 69, 71-72 (Ala. Crim. App. 1994); *Nelson v. State*, 595 So. 2d 506, 510 (Ala. Crim. App.), *rev'd on other grounds*, *Ex parte Nelson*, 595 So. 2d 510 (Ala. 1991); and *Minshew v. State*, 594 So. 2d 703, 713 (Ala. Crim. App. 1991). Under Alabama law, a trial court is required to instruct on a lesser-included offense when requested by the defense if the evidence at trial provides a reasonable basis for such charge, unless it would tend to mislead or confuse the jury. *See Warren v. State*, 35 So. 3d 639, 640-41 (Ala. 2008); *Stennet*, 564 So. 2d at 97; *see also Hopper v. Evans*, 456 U.S. 605, 611-12 (1982).

Nichols recognizes that the trial court did instruct the jury on attempted assault in the first degree as a lesser-included offense of attempted murder. (Doc. 1 at 8.) Nichols summarily asserts, however, "the factual basis of the attempted murder charge more accurately fit and warranted [an instruction upon] the lesser-included offense of reckless endangerment." (*Id.*) Nichols thus complains that his trial counsel should have requested such a charge, and his failure to do so, Nichols says, "caused [him] to be convicted of attempted murder (the greater offense) based on facts that supported the lesser-included offense." (Doc. 6 at 1.) Nichols proceeds to claim that under the Alabama Court of Criminal

23

Appeals's holding in *Stennet*, the trial court would have been required to give a reckless endangerment instruction had it been requested. (*Id.* at 8-9.) Nichols concludes that, "if this is true, then no one could argue that [he] has not met the two-prong test of *Strickland*." (*Id.* at 5.) The court disagrees.

Even assuming that he would have been entitled upon request to a reckless endangerment instruction, Nichols has failed to establish that his counsel's performance was deficient or that he suffered prejudice. First, the failure to request such an instruction represents an objectively reasonable strategic decision. *See Bell v. McNeil*, 353 Fed. Appx. 281, 286 (11th Cir. 2009). The trial court had made clear that it was going to instruct on one lesser-included offense of attempted murder, namely, attempted assault. Unlike those "attempt" crimes, reckless endangerment does not require a specific intent to kill or injure. *See Minshew*, 594 So. 2d at 713; *see also McNabb*, 887 So. 2d at 975. As such, Nichols's counsel could have thought it better to pursue an acquittal on those two charges rather than to give the jury an option to reach a compromise verdict on a still lesser offense requiring no proof of intent to injure. *See Harrop v. Sheets*, 430 Fed. Appx. 500, 506-07 (6th Cir. 2011); *Adams v. Bertrand*, 453 F.3d 428, 435-36 (7th Cir. 2006); *Maynor v. Green*, 547 F. Supp. 264, 268-69 (S.D. Ga. 1982); *cf. United States v. Chandler*, 996 F.2d 1073, 1099 (11th Cir. 1993)("[R]equiring a district court to give a lesser included offense instruction might be at odds with the trial strategy of defense counsel.").

Nichols also fails to demonstrate that the lack of an instruction on reckless endangerment caused him to suffer prejudice within the meaning of *Strickland*. The jury was already presented with an alternative of convicting him of a lesser-included offense, *i.e.*, attempted assault, and yet the jury still found him guilty of the greater, attempted murder offense. A reckless endangerment instruction would not have changed the standard for finding Nichols guilty of attempted murder, so presuming a rational jury as this court must do, an instruction on reckless endangerment would not have changed the outcome of the trial. *See Johnson v. Alabama*, 256 F.3d 1156, 1183 (11th Cir. 2001). In light of the fact that the jury found that Nichols shot at the detectives with the intent to cause their deaths, his assertion that the jury would have convicted him instead of an offense only involving reckless conduct amounts to pure speculation. *See id.; Harris v. Crosby*, 151 Fed. Appx. 736, 738 (11th Cir. 2005); *Smelcher v. Attorney Gen. of Ala.*, 947 F.2d 1472, 1475 (11th Cir. 1991). This claim is without merit.

Nichols also contends that he was denied a fair trial on the theory that his trial attorney provided ineffective assistance by failing to object to a joint trial with his co-defendant, Alando McKenzie. (Doc. 1 at 5, 8.) It is again assumed that this claim is not procedurally defaulted and is subject to *de novo* review. Even so, it is due to be denied because Nichols failed to plead sufficient facts to show that he is entitled to habeas relief.

A § 2254 habeas petition "must meet heightened pleading requirements," *McFarland v. Scott*, 512 U.S. 849, 856 (1994), whereby the "petition must: (1) specify all grounds for

relief available to the petitioner [and] (2) state the facts supporting each ground." Rule 2(c), Rules Governing § 2254 Cases (hereinafter the "§ 2254 Rule"); *see also Mayle v. Felix*, 545 U.S. 644, 649 (2005)(recognizing that the § 2254 Rule 2(c) "requires a more detailed statement" of a claim than does Rule 8, Fed. R. Civ. P., that governs pleading in "ordinary civil cases"). "The reason for the heightened pleading requirement – fact pleading – is obvious. Unlike a plaintiff pleading a case under Rule 8(a), the habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterwards." *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011). A district court is authorized to summarily dismiss claims in a petition that are legally insufficient on their face. *Id.*; *see also* § 2254 Rule 4.

The entirety of Nichols's argument on this claim is that his trial counsel "knew that McKenzie was the target of the drug raid and drugs were found in McKenzie's personal property." (Doc. 1 at 8.) Such an unadorned statement fails to show that the failure of Nichols's counsel to object to the joinder or to move for severance either constituted deficient performance or resulted in prejudice under *Strickland*. *See Munoz v. United States*, 520 Fed. Appx. 855, 856 (11th Cir. 2013). This alone is a sufficient ground to reject this claim.

Moreover, there is little reason to think that an objection to the joinder or a motion to sever by Nichols's counsel would have been successful. Under Alabama law, a trial court

may consolidate for trial the cases of defendants charged in separate indictments if the defendants could have been charged in a single indictment. Ala. R. Crim. P. 13.3(c). In turn, two or more defendants may be charged in a single indictment:

> (1) If they are alleged to have participated in the same act or transaction; or
>
> (2) When the several offenses are part of a common conspiracy, scheme, or plan; or
>
> (3) When the several offenses are otherwise so closely connected that it would be difficult to separate proof of one from proof of the other.

Ala. R. Crim. P. 13.3(b). If a defendant is prejudiced by a joinder of his case with that of another, he may seek a severance. Ala. R. Crim. P. 13.4(a). However, there is a preference in Alabama in favor of joint trials where joint crimes are involved. *See Sneed v. State*, 783 So. 2d 841, 846 (Ala. Crim. App. 1999)(citing *Zafiro v. United States*, 506 U.S. 933 (1993)), *rev'd on other grounds*, *Ex parte Sneed*, So. 2d 863 (Ala. 2000). The decision whether to try defendants together is committed to the discretion of the trial judge. *Weaver v. State*, 710 So. 2d 480, 483 (Ala. Crim. App. 1997); *Jones v. State*, 672 So. 2d 1366, 1370 (Ala. Crim. App. 1995).

Here, the same drug possession evidence was admitted against both Nichols and McKenzie. That evidence was recovered in the raid on the house at which both men were present and resulted in their arrest. Nichols has claimed that he was only a visitor and that no evidence connects him to possession of the cocaine. As discussed by the Alabama Court of Criminal Appeals, however, there is substantial evidence supporting that Nichols was a

27

joint participant in the illegal drug activities in the house, such as evidence that he was observed in the same room where the drugs were found, that he actively attempted to prevent the police from entering the house to execute the search warrant – both by slamming the door as they approached and by shooting at them, that he attempted to flee, and that he was found with $200 and marijuana on his person.  While Nichols claims that McKenzie and others in the house were in actual possession of the cocaine, the evidence regarding constructive and actual possession was not so complicated as to inhibit the jury's ability to independently appraise the evidence as it related to each defendant.  In similar circumstances Alabama courts have rejected claims that separate trials were required.  *See Franklin v. State*, 629 So. 2d 759, 761 (Ala. Crim. App. 1993); *Greathouse v. State*, 624 So. 2d 202, 204-06 (Ala. Crim. App. 1992); *Mobley v. State*, 563 So. 2d 29, 31-32 (Ala. Crim. App. 1990).  These Alabama cases support the court's determination that Nichols has failed to show deficient performance or prejudice based on his counsel's failure to object to the consolidation or to move for a severance.  *See Bogan v. Thompson*, 365 Fed. Appx. 155, 158 (11th Cir. 2010).  Nichols is not entitled to relief based on the alleged ineffective assistance of his trial counsel.

### 2.    Conduct of Appellate Counsel

Nichols raises three claims alleging that his counsel was constitutionally ineffective on direct appeal.  In support, Nichols claims that his counsel should have, but did not, raise claims on appeal (1) that his trial counsel was ineffective for failing to ask for an instruction on reckless endangerment, (2) that his trial counsel was ineffective for failing to contest the

State's motion to consolidate his trial with that of McKenzie, and (3) that the trial court erred in denying Nichols's pre-trial motion to suppress the evidence recovered in the raid.  Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*.  *Brooks v. Commissioner, Ala. Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013).  However, because the Alabama Court of Criminal Appeals rejected these claims on their merits, (*see* doc. 9-15 at 3-5), this court's habeas review must defer to the State court's resolution under § 2254(d).

The Alabama Court of Criminal Appeals concluded that Nichols's first two claims above were without merit because his appellate counsel was newly appointed only after the denial of Nichols's motion for a new trial and, thus, could not have been expected to raise ineffective assistance claims in the trial court in the first instance, as required to perfect such claims for appeal.  (Doc. 9-15 at 3.)  Nichols fails to show that such a disposition is based upon an unreasonable determination of the facts or that it conflicts with Supreme Court precedent.  *Cf. Trevino*, 133 S. Ct. at 1918 (recognizing that Texas criminal procedure "makes it virtually impossible for appellate counsel to adequately present an ineffective assistance of trial counsel claim on direct review" (internal quotation marks, citation, and brackets omitted); *Massaro v. United States*, 538 U.S. 500, 504-05 (2003)("When an ineffective- assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the [purpose] of litigating or preserving [an ineffective assistance] claim and thus [the record is] often incomplete or inadequate for

29

this purpose."). Further, for reasons already stated, Nichols has failed to show that his underlying claims alleging that his trial counsel was ineffective have merit, as it relates to either the failure to request an instruction on reckless endangerment or the failure to contest the consolidated trial with McKenzie's case. As a result, the failure to raise such claims on appeal was not ineffective assistance of counsel. *See Diaz v. Secretary for the Dep't of Corr.*, 402 F.3d 1136, 1144-45 (11th Cir. 2005); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). Nichols is not entitled to relief on either of these two claims.

In his final claim, Nichols contends that his appellate counsel was ineffective for not challenging the trial court's denial of his motion to suppress the evidence obtained in the raid. In his habeas application, Nichols contends that Detective Walker's affidavit presented to obtain the search warrant executed in the raid did not demonstrate probable cause, apparently because that the information was provided to Walker by a confidential informant and allegedly was not sufficiently corroborated. (*See* doc. 1 at 9 ["[T]he affidavit of John Walker . . . was based on his belief, based on information that he received from one whose name is not disclosed. Walker did not disclose any personal name knowledge (sic) nor conducted any personal investigation of the criminal activity."].)

In addressing this claim, the Alabama Court of Criminal Appeals set forth the relevant substance of Detective Walker's affidavit submitted in support of the search warrant application as follows:

> On 12-01-2005 Your Affiant met with a confidential reliable informant who has provided independently corroborated information regarding cocaine

30

and crack cocaine distributions in Birmingham, Alabama.  This confidential reliable informant has also provided information to Your Affiant that has led to the narcotics cases being made and led to the seizure of an illegal firearm, a large amount of cocaine and U.S. currency, which was believed to be proceeds from the illegal distribution of narcotics.  Your Affiant is satisfied that the confidential, reliable informant is familiar with the appearance and packaging of both cocaine and crack cocaine and the confidential reliable informant has demonstrated this familiarity to Your Affiant in the past.

During this meeting with Your Affiant, the confidential reliable informant stated that on 11-30-2005 he/she was present inside of a residence located at 600 79th Street South, Birmingham, Jefferson County, Alabama. While inside the residence, the confidential reliable informant observed cocaine and crack cocaine being kept, sold and concealed by a black male named Carlos Ivy, whose date of birth is [a date specified in 1976] and a black male named Alando McKenzie, a/k/a 'Woudie,' whose date of birth is [a date specified in 1974].  The confidential reliable informant also observed Ivy and McKenzie inside of the residence 'cooking' cocaine (converting cocaine HCL into cocaine base).

On 12-5-2005 Your Affiant again met with the same confidential reliable informant.  During this meeting, the confidential reliable informant stated that, within the last forty-eight (48) hours, he/she was present inside of a residence located at 600 79th Street South, Birmingham, Jefferson County, Alabama.  While inside the residence, the confidential reliable informant observed cocaine and crack cocaine being kept, sold and concealed by . . . Ivy . . . and McKenzie.  The confidential reliable informant stated that Ivy had cocaine and/or crack cocaine concealed in a black and pink 'jewelry bag' and McKenzie had cocaine and/or crack cocaine concealed in a black 'back pack.'

(Doc. 9-15 at 3-4.)  The Alabama Court of Criminal Appeals concluded that the affidavit "clearly and sufficiently set out the basis for the issuance of the search warrant" and adequately "discussed [Detective Walker]'s personal experience in narcotics investigation and indicated that the informant was a known and reliable confidential informant who had provided information in other cases resulting in successful narcotics cases against other

individuals." (*Id.* at 3.)  Accordingly, the Alabama Court of Criminal Appeals held that the affidavit adequately supported the issuance of the search warrant, meaning that appellate counsel's failure to raise the issue on direct appeal was not ineffective assistance. (*Id.* at 5.)

Nichols offers nothing to show that the disposition of this claim by the Alabama Court of Criminal Appeals was unreasonable or conflicted with clearly established Supreme Court precedent for purposes of § 2254(d).  Contrary to Nichols's suggestion, a valid search warrant may be based upon hearsay furnished to police by an informant whose identity is not disclosed when probable cause is shown under the totality of the circumstances, including the "closely intertwined issues" of the informant's basis of knowledge, reliability, and veracity. *Illinois v. Gates*, 462 U.S. 213, 230 (1983).  Even assuming for the sake of argument that the affidavit fell short of showing probable cause, the evidence obtained pursuant to the search warrant still would not have been subject to suppression at trial in this setting unless it could not be said that the officers were acting in "good faith" because the affidavit was "so lacking [in] indicia of probable cause as to render official belief in its existence entirely unreasonable." *Killingsworth v. State*, 33 So. 3d 632, 641 (Ala. Crim. App. 2009); *see also United States v. Leon*, 468 U.S. 897 (1984).  Nichols fails to make any such showing.  Again, because the underlying suppression issue was without merit, appellate counsel's failure to raise it on appeal was not ineffective assistance. *Diaz*, 402 F.3d at 1144-45; *Nyhuis*, 211 F.3d at 1344.  Like all of his other asserted grounds for relief, this claim of ineffective assistance of counsel is due to be denied.

IV.     **CONCLUSION**

Based on the foregoing, Nichols's § 2254 habeas petition is due to be denied.  A separate final order will be entered.

**DONE**, this the 17th day of March, 2014.


_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE